## In the Matter of PENN CENTRAL TRANSPORTATION COMPANY, Debtor.

### Appeal of Richard Joyce SMITH, Trustee of the New York, New Haven & Hartford Railroad.

### Appeal of The FIDELITY BANK, and Joseph F. McDonald, as trustees.

### Nos. 71-1404, 71-1444.

United States Court of Appeals, Third Circuit.

Argued Nov. 16, 1971.

Decided March 16, 1972.

Joseph Auerbach, Sullivan & Worcester, Boston, Mass. (Tate & Ervin, Morgan, Lewis & Bockius, Philadelphia, Pa., James Wm. Moore, New Haven, Conn., Jas. Murray Howe, Edward Woll, Jr., Boston, Mass., John N. Schaeffer, Jr., Philadelphia, Pa., on the brief), for appellants.

Marvin Comisky, Blank, Rome, Klaus & Comisky, Philadelphia, Pa. (Philip C. Patterson, Robert W. Blanchette, Philadelphia, Pa., on the brief), for appellee.

Before HASTIE, ADAMS and MAX ROSENN, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Circuit Judge.

These appeals have been taken by bondholders and indenture trustees from Order No. 180, as amended by Order 196, entered by the District Court for the Eastern District of Pennsylvania in the course of the pending proceeding for the reorganization of Penn Central Transportation Company, a railroad, under section 77 of the Bankruptcy Act, 11 U.S.C. § 205.

By Order No. 179 the reorganization court authorized the conveyance of certain mortgaged real property of the debtor to the City of Boston in exchange for the release of certain obligations of the debtor to the city. The property was conveyed free of encumbrances and the court reserved jurisdiction to determine what substituted security the debtor would be required to provide for creditors who had held liens on the property. Thereafter, the order now in controversy required the debtor's trustees to provide substituted security in the

amount of $26,164. That sum, according to the court's determination, was the net amount that in likelihood could have been realized by a sale of the property. On this appeal the bondholders and indenture trustees contend that the district court erred substantially in its valuation of the property in question.

Before the district court Penn Central claimed that at most the aggregate market value of the five parcels constituting the tract in question was $111,964, from which $85,800 should be subtracted as the amount it, as prospective seller, would necessarily have spent in clearing the land of its tracks and other facilities in order to make the tract salable. On the other hand, the appellants contended that the tract was worth $206,254 and that costs of land clearance would be offset by the very substantial salvage value of track and other removed structures.

The debtor's claims concerning the value of the property were supported only by affidavits of Francis Gasparini, its "Assistant Vice President-Real Estate," and Charles Defendorf, its "Chief Engineer." These affidavits had been duly filed in this proceeding but were not formally offered or introduced in evidence at the hearing on the contested question of valuation. However, we think it was clear to all parties and to the court that Penn Central was relying on these affidavits. And the appellants interposed no objection to this method of proof until after decision.

On the other hand, the appellants presented and relied upon the testimony of Frank Mason, an experienced Boston real estate appraiser who had valued the tract at $206,254 [1] in a formal written appraisal and explained in open court the bases of that evaluation. However, the court adopted the much lower evaluation of the land set out in Penn Central's affidavits [2] and stated in an opinion its reasons for rejecting the appraisals of Mason, the appellants' expert.

In support of its conclusions, the district court reasoned that "Mr. Mason's appraisal is flawed by his failure to take into account the cost of removal and relocation of existing facilities; which would be necessary in order to make the property salable at all. Thus, his figure is at least $85,800 too high." But the record shows Mason did take removal costs into account, though there was a major conflict between his testimony in this regard and Gasparini's affidavit. The Gasparini affidavit supplied merely a conclusory statement that the removal cost would be $85,000, and both he and the court deducted that amount from the value of the land itself in estimating the net yield of the tract to the seller. Mason did not say how much these removals would cost but did testify that the salvage value of the removed structures would be as great as the cost of removal. Treating these items as offsetting, he made no deduction of removal costs from the estimated selling price. The testimony of Mason as to substantial offsetting salvage value was uncontradicted. Therefore, we think the court erred in deducting removal costs as estimated by Gasparini without taking some salvage value into account. We add the observation that, for both sides, proof of removal cost and salvage value was conclusory and lacking in any detail that would aid judgment as to credibility. A new hearing will provide an opportunity for a more illuminating presentation of facts relevant to both cost of removal and salvage value of structures.

The court also characterized Mason's evaluations as apparently "somewhat inflated" because he based them on sales of "comparable" properties which "were in more favorable locations." In his

---

1. This value took into account a claimed encumbrance upon the largest parcel in the form of an easement for bridging. But for the easement, Mason said that the entire tract would be worth $294,648. Both Mason's detailed written appraisal and his testimony are in evidence.

2. The Gasparini affidavit estimated the total land value at about $112,000 minus removal costs and, for reasons rejected by the district court, argued that the property even "has a negative value in the estate of Penn Central."

formal appraisal Mason had listed and analyzed seven nearby properties that had been sold recently, with critical comment on the location of each. He compared or contrasted the location of each property with that of the tract in controversy. In four cases he found the property recently sold was in an inferior or similar location. Penn Central did not rebut this expression of the judgment of an experienced appraiser. And, while a court should not accept expert testimony uncritically, we have not found a basis in the record for discrediting Mason's judgment on the matter of comparabilities. This consideration and an important related one are notably pertinent to the evaluation of Parcel 1, the largest section of the Penn Central tract.

Parcel 1 was encumbered by an easement of the city for bridging to carry a street above and across the land.[3] Mason valued the parcel, encumbered, at $2.00 per square foot, in all $98,216, while Gasparini's evaluation was $29,464 at a rate of 60 cents per square foot. Commenting on Mason's evaluation of Parcel 1, the district court said: "To me, it is inconceivable that a purchaser could be found who would be willing to pay $186,610 for the 50-foot strip of land under the bridge, subject to this easement." But the $186,000 figure was Mason's estimate of the value of the land free of the easement, while about half of that amount, $98,000, was his evaluation of the land encumbered by a permanent bridge easement. Moreover, the quoted language reflected a belief that the strip was only 50 feet wide when in fact it was 100 feet wide. It is not clear whether so narrow a rectangle as the court contemplated would be as valuable as one of identical acreage but twice as wide. Mason and Gasparini also differed greatly in their judgment of the extent to which the bridge easement decreased the value of the burdened Parcel 1. Mason testified that Parcel 1 would be worth $4 per square foot if unencumbered but that encumbered with bridge rights, it would be worth half as much, or $2 per square foot. The Gasparini affidavit estimated that the bridge rights caused an 80 percent diminution of value from $3 per square foot to 60 cents. The district court adopted Gasparini's estimation of both basic land value and reduction because of encumbrance as "substantially accurate."

Beyond the considerations already mentioned, these conflicts in the evidence and their resolution exemplify an aspect of this case that disturbs us. Mason was an experienced independent appraiser, albeit one employed for the purpose of this case by the appellants. Gasparini was an officer of Penn Central, properly interested as such in minimizing the debtor's obligation to deplete its inadequate operating funds by surrendering any substantial sum to be held as security for a creditor. Moreover, though the appellants did not make any objection to the use of Gasparini's affidavit as evidence, the fact remains that this was a conclusory statement of an interested person, the accuracy of which was not tested by cross-examination. In these circumstances we find it very difficult to find a rational basis for concluding that Gasparini was right in estimating an 80 percent loss of value attributable to the bridge easement when Mason testified under cross-examination that in his expert judgment the loss of value was only 50 percent.

In brief, we think the district court erred in its disposition of the related issues of removal cost and salvage value and in stating an inadequate basis for its conclusion that Mason's evaluations were inflated. The court also incorrectly understood Mason's evaluation of Parcel 1 unencumbered to be his evaluation of that parcel as encumbered by the bridge easement. And since this misunderstanding caused the court to believe that Mason's evaluation was twice the amount actually stated, it may well have influenced the court to discredit Mason's expertize generally. Finally, the method of proof, opposing affidavits to

---

3. The city bridge over Parcel 1 was destroyed by fire in 1968 and has not been rebuilt.

expert testimony, was less than satisfactory. In the absence of timely objection, this last consideration, standing alone, would not be decisive. But all factors considered, we have concluded that there should be a new hearing on the disputed question of the value of the tract in question and a resultant redetermination of the amount of substituted security to which the indenture trustees are entitled. We add the thought that, since the amounts involved in this controversy over evaluation of a small tract are not very large in relation to the major concerns of the parties, it should be possible for the debtor and the appellants to agree upon a fair sum to be provided as substituted security without necessity for another expensive and time consuming evidentiary hearing.

Order 180, as amended by Order 196, will be vacated and the cause remanded to the district court for further proceedings consistent with this opinion.

